UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| D.E.G., | : | |
| | : | |
| Plaintiff, | : | Case No. 2:23-cv-04256 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| RED ROOF INNS, *et al.*, | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| Defendants. | : | |
| | : | |

OPINION & ORDER

This matter comes before this Court on Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, RRF Holding Company, and RRI West Management, LLC's ("RRI Defendants") motion to dismiss for failure to state a claim (ECF No. 26). For the reasons that follow, this Court **GRANTS IN PART** and **DENIES IN PART** the motion. (ECF No. 26). The motion is **GRANTED** with respect to Plaintiff's perpetrator liability claim and **DENIED** as to all other claims.

I.        BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a). Plaintiff D.E.G., alleges that, from 2010 to 2013, she was repeatedly sex trafficked at a Red Roof Inn located at 7480 N. High St., Columbus, OH 43235 ("N. High RRI"). (ECF No. 1 ¶ 28). During this time, Plaintiff alleges that her trafficker "controlled her through drugs, physical violence and force," "made her engage in commercial sex acts for his financial benefit," and "posted ads of her online without her consent." (*Id.* ¶ 25).

In December 2023, Plaintiff sued the franchisors, managers, and operators of the N. High RRI ("**RRI Defendants**");[1] and its owners and operators ("**Franchisee Defendants**"),[2] seeking damages under the TVPRA's civil liability provision, 18 U.S.C. 1595(a). Plaintiff explains that RRI Defendants' control and supervision over the N. High RRI included "collection and review of surveillance footage," "capture, retention, and analysis of . . . extensive guest data and detailed reports about hotel operations through reservation and property management systems," (ECF No. 1 ¶ 72), "monitor[ing] news stories and law-enforcement reports regarding criminal activity," and "carefully monitoring online reviews and other customer feedback." (*Id.* ¶¶ 57–58).

Given the degree of control and supervision RRI Defendants maintained over the N. High RRI, Plaintiff asserts that RRI Defendants "knew or should have known about the pervasive sex trafficking at the N. High RRI" based on "obvious indicators" and "well-known 'red flags' for sex trafficking in the hospitality industry." (*Id.* ¶ 65). These signs included "paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs . . . ." (*Id.* ¶ 67). Aside from the trafficking she herself endured, Plaintiff alleges that "multiple trafficking victims [were] exploited at the subject RRIs prior to [D.E.G.'s] trafficking" who exhibited these "red flags" that were "observed by hotel staff and management." (*Id.*), As for her own trafficking, Plaintiff alleges that employees at the N. High RRI "observed or were made aware of" these "obvious signs

---

[1] "**RRI Defendants**" include Red Roof Inns, Inc.; RRF Holding Company, LLC; Red Roof Franchising, LLC; and RRI West Management which, according to Plaintiff, "operated, controlled, and/or managed" the N. High RRI. (ECF No. 1 ¶ 14). Describing the relationship between these entities, Plaintiff alleges that Red Roof Inns, Inc. and RRI West Management share a common parent company (*id.* ¶ 13); Red Roof Inns, Inc. is the parent company of RRF Holding Company, LLC (*id.* ¶ 12); RRI Franchising is a direct subsidiary of RRF Holding Company, LLC. (*id.*); and RRI West Management; Red Roof Inns, Inc.; and Red Roof Franchising, LLC are corporate affiliates. (*Id.* ¶ 13).

[2] "**Franchisee Defendants**" include Motel 6 Operating, LP and G6 Hospitality, LLC. (ECF No. 1 ¶ 15).

of trafficking," as well as other indicators of trafficking. (*Id.* ¶¶ 75–76). For example, Plaintiff alleges she would stay at the RRI "for multiple days at a time" and "had to go to the front desk each day to pay for the rooms again." (*Id.* ¶ 74). The hotel rooms were "frequently paid for with cash or prepaid cards," and she "would book two rooms at a time . . . with one room for 'dates' and the other for waiting for 'dates' with her trafficker, his enforcers, and other victims." (*Id.*). When booking the rooms, Plaintiff notes that hotel staff observed that she was "on drugs, emotional, nervous, scared, and often bruised," and "had little to no baggage." (*Id.*). Other indicators "consistent with the modus operandi of her trafficker," according to Plaintiff, included:

- When she was with a john, her trafficker or his enforcers would often wait in the hotel.

- Housekeeping staff was usually prevented from entering the room for regular cleaning, towel exchange, and other standard room services.

- D.E.G. requested extra towels from housekeeping. Hotel staff observed that she was on drugs and was emotional, nervous, scared, and often bruised.

- Jane Doe (D.E.G.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time.

- There was heavy foot traffic in and out of Jane Doe (D.E.G.)'s room involving men who were not hotel guests. This traffic was visible to hotel staff.

- After Jane Doe (D.E.G.) checked out, hotel cleaning staff would have noticed sex paraphernalia like condom wrappers and lubricant.

(*Id.*). Plaintiff further contends that Defendants and her traffickers had "an implicit understanding" that allowed her traffickers to operate openly and "with little regard for concealment." (*Id.* ¶ 95).

Plaintiff's complaint, filed on December 28, 2023, asserts three "causes of action" under the TVPRA against RRI Defendants: (1) a claim for perpetrator liability; (2) a claim for beneficiary

liability; and (3) a claim for vicarious liability. (ECF No. 1 ¶¶ 113–125). On April 1, 2024, RRI Defendants moved dismiss the complaint for failure to state a claim. (ECF No. 26). Plaintiff opposed (ECF No. 30), and RRI Defendants replied. (ECF No. 37). This matter is now ripe for resolution.

## II.     STANDARD OF REVIEW

A district court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). In ruling on a 12(b)(6) motion, a court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the court must resolve the conflict for the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

The court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). To survive dismissal, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### III.  LAW & ANALYSIS

RRI Defendants argue that Plaintiff's TVPRA claims should be dismissed because: (1) the claims are barred by the TVPRA's 10-year statute of limitations; and (2) Plaintiff's allegations fail to support a plausible TVPRA claim. This Court addresses each argument in turn.

### A.  Statute of Limitations

The TVPRA requires that a claim be "commenced not later than . . . 10 years after the cause of action arose." 18 U.S.C. § 1595(c)(1). The Sixth Circuit has recognized that Rule 12(b)(6) is "generally an inappropriate vehicle for dismissing a claim based upon the statute of limitations," unless the allegations affirmatively show a claim is time-barred. *Cataldo v. United States Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012). This is because the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c), and a plaintiff "generally need not plead the lack of affirmative defenses to state a valid claim." *Cataldo,* 676 F.3d at 547 (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)). But where "the allegations in the complaint affirmatively show that the claim is time-barred," dismissal under Rule 12(b)(6) is appropriate. *Id.* (citing *Jones*, 549 U.S. at 215); *see Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 743 (S.D. Ohio 2020) ("A motion to dismiss based on the statute of limitations . . . can be granted only where the defense appears valid from the face of the Complaint alone.").

RRI Defendants contend that Plaintiff's claims are time-barred because she was allegedly trafficked between 2010 and 2013 but did not bring her claims until December 28, 2023. Plaintiff maintains that her claims are timely because she filed suit "fewer than 10 years after the end of 2013." (ECF No. 30 at 15–16). According to Plaintiff, she "had no obligation to plead around the

statute of limitations or to identify the specific dates when she was trafficked." (*Id.*). But even if the statute of limitations bars any portion of her claims, she argues that equitable tolling principles forestall the expiration of the limitations period.

Although Plaintiff does not specify what day the last trafficking incident occurred, this Court concludes that it is conceivable, based on her allegations, that the trafficking concluded within the 10-year limitations period of the TVPRA. *See* ECF No. 1 ¶ 31 ("Jane Doe (D.E.G.) remained under the continuous control of her traffickers through at least 2014."); *id*. ¶ 126 ("At the time she was harmed and through at least 2014, Jane Doe (D.E.G.) was under coercion and control of traffickers who abused and manipulated her."); *id.* ¶ 129 ("As a result of her continuous trafficking at the subject RRI through at least 2013, Jane Doe (C.M.G.) was drugged, beaten, sexually assaulted, and mentally abused.").

Because Plaintiff's allegations do not affirmatively show that her claims are time-barred, dismissal on statute-of-limitations grounds is inappropriate. *See Cataldo*, 676 F.3d at 547. This Court also declines RRI Defendants' invitation to read the Complaint as alleging discrete instances of trafficking. As this Court has recognized, TVPRA claims are "precisely the sort to which the 'continuing violation' doctrine should apply," such that "the statute of limitations does not begin to run until the pattern of wrongful conduct has concluded." *See S.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:23-CV-1731, 2024 WL 3226126, at *2 (S.D. Ohio June 28, 2024). Here, it is plausible that the "pattern of wrongful conduct [] concluded" on the last day of 2013, so as to survive dismissal on timeliness grounds. *See Childress v. City of Cincinnati, Ohio*, ___ F. Supp. 3d ___, 2025 WL 446095, at *7 (S.D. Ohio Feb. 10, 2025) (declining to dismiss plaintiff's claims on limitations grounds because although plaintiff "doesn't specify what day those incidents occurred," defendant "likewise fails to meet its burden in affirmatively showing that those claims

fall outside the limitations period"); *C.S. v. Wyndham Hotels & Resorts, Inc.*, 538 F. Supp. 3d 1284, 1304 (M.D. Fla. 2021) ("[S]ince it is not apparent from the face of the Complaint that the claim is time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.").

Additionally, Plaintiff's allegations that she was controlled "through . . . physical violence and force" until "at least 2014," (*see* ECF No. 1 ¶¶ 25, 126), are sufficient to support an inference that any failure on her part "to meet the legally-mandated deadline unavoidably arose from circumstances beyond [] [her] control." *Graham-Humphreys v. Memphis Brooks Museum*, 209 F.3d 552, 560-61 (6th Cir. 2000). Questions about timeliness are therefore better left for summary judgment (or ultimately trial), when this Court can evaluate compliance with the statute of limitations on a more complete factual record. *See E.S. v. Best W. Int'l, Inc.*, 510 F. Supp. 3d 420, 432 (N.D. Tex. 2021) (concluding that "whether the statute of limitations should be tolled involves fact questions that are better resolved at summary judgment," where plaintiff argued "that the statute of limitations for her claim is tolled due to the force and coercion Plaintiff underwent by her trafficker"); *Franco v. Diaz*, 51 F. Supp. 3d 235, 248 (E.D.N.Y. 2014) ("[W]hen plaintiffs raise an equitable tolling argument, a court must deny a motion to dismiss based on the statute of limitations unless all assertions of the complaint, as read with required liberality, would not permit the plaintiffs to prove that this statute was tolled." (alteration in original) (quoting *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009))).

Because Plaintiff's allegations do not affirmatively show that her claims are time-barred, and she alleges sufficient facts to justify tolling the statute of limitations, this Court declines to dismiss Plaintiff's claims as untimely at this juncture.

### B. Sufficiency of TVPRA claims

RRI Defendants also challenge the sufficiency of Plaintiff's allegations to state a plausible claim for liability under the TVPRA's civil provision, 18 U.S.C. § 1595. That provision provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a). As the statutory text makes clear, Section 1595 creates two kinds of civil liability: perpetrator liability and beneficiary (or participant) liability. *G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 552–53 (7th Cir. 2023). To establish a "violation of this chapter" under Section 1595(a), sex trafficking victims look to 18 U.S.C. § 1591, the provision of the TVPRA that sets forth criminal penalties for sex trafficking. Section 1591 provides:

> (a) Whoever knowingly—
>
> (1) in or affecting interstate or foreign commerce, ... recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or
>
> (2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).

Because Plaintiff seeks to hold RRI Defendants directly and vicariously liable for TVPRA violations under both a beneficiary theory and perpetrator theory, this Court proceeds by first

assessing Plaintiff's direct liability claim under the perpetrator theory; then her direct liability claim under the beneficiary theory; and, finally, her indirect liability claim.

### 1.   Direct Liability

Having extensively analyzed the civil liability of hotel defendants in TVPRA sex trafficking cases, *see S.R.*, 2024 WL 3226126, at *2 (collecting cases), this Court begins—as always—by noting that a civil claim under Section 1595(a) can be a standalone claim, and defendants need not have committed the underlying criminal sex trafficking offense under Section 1591 for a plaintiff to maintain an action under Section 1595(a). *See M.A. v. Wyndham Hotels & Resorts, Inc*., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *G.G.*, 76 F.4th at 553 n.4 ("Courts unanimously agree that a civil defendant under Section 1595 need not have violated Section 1591.") Additionally, Plaintiff's allegation that she is "a victim of sex trafficking within the meaning of § 1591" (ECF No. 1 ¶ 113) is sufficient, at the pleading stage, to establish that she is a "victim of a violation of this chapter" under 18 U.S.C. § 1595(a).

### a.   Perpetrator Liability

Plaintiff's first cause of action asserts that Defendants are liable as "perpetrators" of 18 U.S.C §1591(a) violations. (ECF No. 1 ¶¶ 113–15). To survive dismissal on this claim, the Complaint must plausibly allege that RRI Defendants knowingly and in interstate or foreign commerce either: (a) recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited  a person; or (b) benefitted from knowingly assisting, supporting, or facilitating, the recruiting, enticing, harboring, transporting, providing, obtaining, maintaining, patronizing, or soliciting of a person. 18 U.S.C. § 1591. Plaintiff must also plead sufficient facts to support RRI Defendants' *actual knowledge* "that means of force, threats of force, fraud . . . or any combination of such means will be used to cause the person to engage in a commercial sex

act." 18 U.S.C. § 1591. As this Court recognized in *M.A.*, Section 1591's knowledge standard is much higher than the "should have known" standard required for beneficiary liability. *M.A.*, 425 F. Supp. 3d at 966; *see also Acevedo v. Exp. Realty, LLC*, 713 F. Supp. 3d 740, 764–65 (C.D. Cal. 2024).

RRI Defendants argue that the Complaint fails to allege that they had "actual knowledge" of D.E.G.'s trafficking. Plaintiff retorts that her allegations "support an inference that hotel staff and management had actual knowledge of, or at least were willfully blind to the trafficking at the Subject RRIs and yet participated in harboring her and facilitating her trafficking." (ECF No. 30 at 15 n. 23) (citing ECF No. 1 ¶¶ 76–77, 82–85). She cites several cases in support of her position, but those cases are distinguishable.

In *Canosa v. Ziff*, for example, the court held that the plaintiff sufficiently alleged that Harvey Weinstein's "TWC Companies" violated 18 U.S.C. § 1591 by "actively participat[ing] in the recruitment and enticement of women, knowing that those women would—or would likely—be coerced by Weinstein into engaging in what amounted to a commercial sex act with him." No. 18 CIV. 4115 (PAE), 2019 WL 498865, at *23 (S.D.N.Y. Jan. 28, 2019). There, the complaint alleged that "the TWC Companies maintained women on their payroll whose responsibilities including introducing Weinstein to young women and covering up his assaults"; "the TWC Companies knew that Weinstein's recurrent practice—indeed, pattern—was to lure women like Canosa into pretextual meetings and then subject them to forced sexual acts[] [but] . . . nevertheless continued to pay for and facilitate Weinstein's interstate and foreign travel, on which trips some assaults, including of [Plaintiff], occurred"; "employees of the TWC Companies gave Weinstein the medications he required to perform sexual acts and cleaned up after his sexual assaults"; and "the TWC Companies expressly or tacitly linked tangible job benefits to the commission of the

forced sexual advances and sexual assaults aforesaid." *Id.* The facts alleged in *Canosa* therefore directly link the entities and the trafficker in a way that Plaintiff's allegations do not here.

Likewise, in *United States v. Bhimani*, No. CR 3:17-324, 2021 WL 5179196 (M.D. Pa. Nov. 8, 2021), the court upheld the criminal liability of a motel owner and its general manager under the TVPRA based on "ample evidence" showing that the general manager "knowingly rented rooms to drug and sex traffickers, gave discounts, hired drug dealers and users to work at the hotel, did not fire them once they learned about drug activity, allowed criminal guests to check in under assumed names, allowed guests to check in without showing identification, refrained from kicking guests out despite disruptive, criminal behavior, and allowed criminals to stay and work out of their room and pay the room rate with the proceeds." *Id.* at *9. Although Plaintiff here alleges that RRI Defendants and hotel staff were "willfully blind" to her sex trafficking, she fails to allege sufficient facts to support such an inference or other facts that resemble the circumstances in *Bhimani*. The case is of even less import, given that it was a criminal case and the facts there were considered under a different procedural posture.

Finally, *Ricchio v. McLean*, 853 F.3d 553 (1st Cir. 2017) does not compel a different conclusion. There, the First Circuit reversed the dismissal of a TVPRA claim against motel operators and a motel owner where the complaint alleged that the motel operators had prior commercial dealings with the trafficker and intended to reinstate these dealings for profit "in circumstances in which [the trafficker's] coercive and abusive treatment of [the victim] as a sex slave had become apparent" to the motel operators. *Id.* at 555. The allegations in *Ricchio* included a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to Ricchio's obvious physical deterioration." *Id.*

Ricchio alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id*. Although Plaintiff contends that RRI Defendants' "familiar[ity]" with the population of traffickers at the hotel and "implicit[] encourage[ment]" of their illegal activities constitute "harboring . . . and knowing facilitation" (ECF No. 30 at 22 n. 19), her allegations "do not rise to the level of obviousness present in *Ricchio*." *See M.A.*, 425 F. Supp. 3d at 966. Nor do the facts alleged "suggest a direct agreement between her trafficker and any of the hotel defendants," or "that a specific hotel staff member saw her in a deteriorated state." *Id.*

In addition to being less overt, Plaintiff's allegations hew more closely to legal conclusions than factual allegations. *See e.g.*, ECF No. 1 ¶ 83 ("Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the N. High RRI, Franchisee continued renting rooms to these traffickers . . . ."). Because this Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Twombly*, 550 U.S. at 555*; Iqbal*, 556 U.S. at 679 (legal conclusions "must be supported by factual allegations"), the bare contention that RRI Defendants *actually knew* that Plaintiff was being trafficked, without more, is insufficient.

Absent any facts to suggest that RRI Defendants possessed actual knowledge of D.E.G.'s trafficking, RRI Defendants cannot be held liable as sex trafficking "perpetrators" under section 1595(a). Accordingly, this Court **GRANTS** RRI Defendants' motion to dismiss with respect to Plaintiff's perpetrator liability claim and **DISMISSES** that claim against RRI Defendants.

### b. Beneficiary Liability

Plaintiff's claim under the TVPRA's beneficiary theory of liability, which does not require actual knowledge, fares better. To survive dismissal on this claim, the Complaint must plausibly

allege that: (1) RRI Defendants "knowingly benefitted, financially or by receiving anything of value"; (2) from participating in a venture; [and] (3) that they "knew or should have known [that the venture] engaged in an act in violation of [the TVPRA]." § 1595(a). As this Court noted in *Doe*, "a plaintiff may satisfy these elements by showing that 'defendant's own acts, omissions, and state of mind establish each element.'" *See Doe v. Best W. Int'l, Inc.*, No. 2:23-CV-3459, 2024 WL 3759761, at *4 (S.D. Ohio Aug. 12, 2024) (quoting *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021)).

### (1) Knowing Benefit

The "knowing benefit" element merely requires that RRI Defendants knowingly receive a financial benefit, not that RRI Defendants have actual knowledge of an illicit venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F. Supp. 3d at 965; *accord H.H. v. G6 Hosp., LLC*, No. 2:19-CV-755, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019); *see also J.L.*, 521 F. Supp. 3d at 1061 (concluding that allegations that a hotel defendant received a percentage of room revenue where trafficking occurred, was sufficient to meet the knowing benefit element under 18 U.S.C. § 1595(a)); *Gilbert v. U.S. Olympic Comm.*, 423 F. Supp. 3d 1112, 1137 (D. Colo. 2019) (finding that the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services for liability to attach").

Because Plaintiff alleges that RRI Defendants rented rooms to her traffickers and benefited financially from those rentals (ECF No. 1 ¶¶ 92, 95, 98), Plaintiff's allegations are enough to satisfy the element of "knowing benefit" under Section 1595(a).

*(2) "Participated in a venture"*

Plaintiff has also alleged sufficient facts to establish that Defendants' conduct constitutes "participation in a venture" under Section 1595(a). As this Court held in *M.A.*, Defendants need not have actual knowledge of the sex trafficking or perform an overt act to have "participated" in a sex trafficking venture for TVPRA liability to attach, "otherwise the 'should have known' language in § 1595(a) would be meaningless." 425 F. Supp. 3d at 971; *see also G.G.*, 76 F.4th 544 (participation under TVPRA's civil remedy provision does not require direct participation, criminal violation of TVPRA, or actual knowledge of criminal wrongdoing); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 937 (D. Or. 2020) (agreeing with this Court's reasoning in *M.A.* that a plaintiff is "not required to allege actual knowledge of a sex trafficking venture or the performance of an overt act in order to sufficiently plead the 'participation in a venture' element of her § 1595 claim"). Plaintiff, however, "must allege at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *See M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 288–89 (D. Conn. 2013)).

D.E.G.'s allegations here—that RRI Defendants were "receiv[ing] financial benefits from operating the subject RRIs, including revenue generated specifically by renting rooms to traffickers"—satisfies the "participation in a venture" element. (*See* ECF No. 1 ¶ 95). Resisting this conclusion, RRI Defendants argue that the "legitimate and routine commercial operations cannot constitute participation in a venture that violates the TVPRA." (ECF No. 26 at 22). In support, they cite the Eleventh Circuit's decisions in *Doe #1 v. Red Roof Inns, Inc.*, 21 F. 4th 714 (11th Cir. 2021) and *K. H. v. Riti, Inc.*, No. 23-11682, 2024 WL 505063 (11th Cir. Feb. 9, 2024).

In *Doe # 1*, the Eleventh Circuit held that the Section 1595(a) beneficiary claims against hotel franchisors failed because the plaintiffs "provided no plausible allegations that the franchisors took part in the common undertaking of *sex trafficking*." *Doe #1*, 21 F. 4th at 721 (emphasis added). According to the Eleventh Circuit, the Does' allegations "that the franchisors sent inspectors to the hotels who would have seen signs of sex trafficking and that they received reviews mentioning sex work occurring at the hotels" were insufficient because "observing something is not the same as participating in it." *Id. Riti* likewise rejected a similar claim, reiterating that "allegations of financial benefit alone are not sufficient to establish that the defendant participated in a *sex trafficking* venture and observing signs of sex trafficking is not the same as participating in it." *Riti*, 2024 WL 505063, at *4 (emphasis added).

But both *Doe* and *Riti* analyzed plaintiffs' claims that defendants participated in a *sex-trafficking* venture, not the commercial ventures that D.E.G. pleads here. (*See* ECF No. 1 ¶ 95 (explaining how "Defendants [] knowingly benefited from engaging in a *commercial venture* with other Defendants and with hotel staff") (emphasis added)). In *Doe #1*, the Eleventh Circuit recognized that its analysis may have been different if the plaintiffs had pled the hotel franchisor defendants had participated in commercial ventures operating the hotel rather than alleging that they participated in sex-trafficking ventures. 21 F.4th at 727. The *Doe #1* plaintiffs, however, had not done so and had refused an opportunity to amend. *Id*. Thus, neither *Doe #1* nor *Riti* applies to the commercial ventures that D.E.G. pleads here. *See C.T.*, 2023 WL 3510879, at *4 ("Since this case finds itself in waters the Eleventh Circuit declined to wade in, *Doe #1* is not determinative."); *A.R. v. Wyndham Hotels & Resorts, Inc.*, No. 2:21-CV-04935, 2022 WL 17741054, at *7 (S.D. Ohio Dec. 16, 2022) (because plaintiff "alleges that Defendant 'participated in a commercial business venture under § 1595[ ] by receiving royalties from Plaintiff's traffickers renting rooms

15

at their branded locations,'" the Eleventh Circuit's decision in *Doe # 1* "is not controlling"). Indeed, both the Eleventh and Seventh Circuits have recognized that the relevant "venture" under Section 1595 need not be "specifically a sex trafficking venture" and can instead be a "commercial venture" like running or expanding a business that facilitates sex trafficking. *See G.G. v. Salesforce.com, Inc.*, 76 F.4th 544, 554 (7th Cir. 2023) (citing *Doe #1*, 21 F.4th at 727).

Because Plaintiff's allegations raise a plausible inference that RRI Defendants participated in hotel-operating commercial ventures that rented rooms to people that RRI Defendants should have known were engaged in sex trafficking, the Complaint satisfies the "participation in a venture" requirement. *See M.A.*, 425 F. Supp. 3d at 968 (defendant who continues an ongoing business relationship with traffickers, including by continuing to rent rooms to them, after the defendant should know that the business relationship facilitates trafficking, participates in a §1595(a) venture); *A.R.*, 2022 WL 17741054, at *7 (recognizing defendant's "business venture with the franchisee hotels" as sufficient to show participation in a venture under Section 1595); *T.P.*, 2022 WL 17363234, at *11 (recognizing this theory of venture).

### (3) "Knew or should have known" that the venture violated the TVPRA

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Unlike a perpetrator claim, RRI Defendants need not have actual knowledge of trafficking crimes for beneficiary liability to attach, as the "should have known" language in Section 1595(a) permits constructive knowledge. *M.A.*, 425 F. Supp. 3d at 970 (citing *Jean-Charles*, 937 F. Supp. 2d at 288–89).

RRI Defendants' arguments that Plaintiff fails to satisfy this element are multi-fold. First, they contend that "the 'obvious' signs Plaintiff alleges are not tied to any N. High RRI employee." (ECF No. 26 at 25). Second, they argue that the signs allegedly observed by employees at the N.

High RRI—Plaintiff's trafficker using prepaid cards; a maid seeing Plaintiff with a john once; condoms or lubricant left in the hotel rooms after check-out; heavy foot traffic in and out of Plaintiff's room; and Plaintiff dressing provocatively—do not "plausibly suggest Defendants knew or should have known Plaintiff was allegedly being trafficked." (*Id.* at 25). "At most," RRI Defendants contend, they are signs of prostitution, not sex trafficking." (*Id.*). Third, RRI Defendants emphasize that "[b]road allegations of sex trafficking in the hotel industry do not allege that these Defendants had knowledge that *this Plaintiff* was subject to trafficking at a particular hotel." (*Id.*). Finally, according to RRI Defendants, Plaintiff cannot establish constructive knowledge "by listing customer reviews and news articles about various Red Roof branded properties not at issue here." (*Id.* at 28).

But RRI Defendants' reading of the Complaint misses key factual allegations. For one, in addition to the signs RRI Defendants reference, Plaintiff alleges that "hotel staff observed [Plaintiff] and saw that she was emotional, nervous, scared, and often bruised." (ECF No. 1 ¶ 74). This allegation takes Plaintiff's claim outside what might constitute consensual commercial sex acts, and into the coerced sex trafficking territory prohibited by the TVPRA. For this reason, and as explained below, the cases on which RRI Defendants rely are not on point and, hence, not controlling.

In *J.B. v. G6 Hosp.,* for example, the plaintiff described instances when she was either in a car in the parking lot or in rented rooms to argue that motel staff "should have been aware" that she was being trafficked. No. 19-CV-07848-HSG, 2020 WL 4901196, at *10 (N.D. Cal. Aug. 20, 2020) (emphasis added). The plaintiff, however, had noted that the car windows were covered up and "never allege[d] that she saw or approached employees with or without her trafficker." (*Id.*). Finding the allegations insufficient, the court contrasted the case with *M.A.*, in which the plaintiff

alleged that she had "visible physical changes, such as bruising, . . . and that [d]espite her desperate pleas and screams for help, after being beaten or choked at the Defendants' hotel properties, the hotel staff ignored her . . . ." *M.A.*, 425 F. Supp. 3d at 962. Although a plaintiff need not allege facts as egregious as *M.A.* to state a claim, the court in *J.B.* noted that "allegations that the victim sought help and was seen by employees with physical injuries or other facts suggesting coercion allow courts to infer that motel or hotel employees should have known that human trafficking was occurring, as opposed to other criminal conduct, such as prostitution." *J.B.*, 2020 WL 4901196, at *10.

Likewise, in *A.B. v. Hilton Worldwide Holdings Inc.*, the court acknowledged that "factual allegations listing indicia of trafficking (i.e., condition of the hotel room, frequent male visitors) may support a theory that a hotel where Plaintiff was trafficked knew or should have known of Plaintiff's trafficking." 484 F. Supp. 3d at 938–39. But because the plaintiff there "merely allege[d] that she repeatedly 'encountered' the same hotel staff who paid no attention to her" and did not allege "she had prominent bruises, brandings, or other visible injuries," the allegations could not show that the hotels knew or should have known that the commercial sex was a result of fraud, force, or coercion. *Id.* at 941.

*S.J. v. Choice Hotels Int'l, Inc.* does not compel a different conclusion. 473 F. Supp. 3d 147 (E.D.N.Y. 2020). There, the court dismissed a beneficiary liability claim against a franchisor when the plaintiff alleged "knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings" rather than "knowledge of a specific sex trafficking venture." *Id.*

Plaintiff's allegations, to be sure, do cover the broader problem of sex trafficking in the hotel industry. But her allegations go farther. D.E.G. alleges that she appeared "emotional, nervous, scared, and often bruised" when interacting with hotel staff; that "her trafficker or his enforcers

would often wait in the hotel"; and that "[h]ousekeeping staff was usually prevented from entering the room." (ECF No. 1 ¶ 75). Plaintiff also alleges sufficient facts to impute the constructive knowledge of on-the-ground hotel staff to RRI Defendants by way of direct, day-to-day control through, among other things, RRI Defendants' "collection and review of surveillance footage," and the "capture, retention, and analysis of . . . extensive guest data and detailed reports about hotel operations through reservation and property management systems." (*See* ECF No. 1 ¶¶ 71, 74).

This Court has previously held that a defendant's notice of "the prevalence of sex trafficking generally at their hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" meet the constructive knowledge requirement. *M.A.,* 425 F. Supp. 3d at 968. In comparable environments, this Court has also rejected arguments that hotel defendants "must have had knowledge or constructive knowledge with respect to Plaintiff specifically and that a generalized awareness of sex trafficking in its low-cost hotels is insufficient." *See T.D.P. v. Choice Hotels Int'l, Inc.*, 725 F. Supp. 3d 784, 798–99 (S.D. Ohio 2024). As this Court reasoned in *T.D.P.*, "the express terms of [18 U.S.C. § 1595] impose liability for benefiting from a venture that the Defendant knew or should have known was engaged in violations of § 1591, not violations of § 1591 with respect to a particular person." *Id.*

Taken together, Plaintiff's allegations, in the context of the other facts alleged in the complaint, are sufficient to survive a motion to dismiss. Specifically, the Complaint supports a claim under the TVPRA's beneficiary theory because the facts alleged raise a plausible inference that RRI Defendants "should have known" about the sex trafficking nature of the venture. And while, ultimately, these allegations may be unsubstantiated on a fuller record, they satisfy the three-pronged requirement of 18 U.S.C. § 1595 to survive a motion to dismiss. *See M.A.,* 425 F. Supp.

3d at 971–72 (denying motion to dismiss of hotel parent company defendants where plaintiff pled that defendants controlled employee training, room pricing, provided online booking platform, and conducted inspections); *T.D.P.*, 725 F. Supp. 3d at 798–99.

### 2. Indirect Liability

Plaintiff's third and final cause of action asserts that RRI Defendants are vicariously liable for TVPRA violations via theories of joint venture, alter ego, and agency. (*See* ECF No. 1 ¶¶ 120–125). RRI Defendants urge dismissal of Plaintiff's vicarious liability claim for two reasons, but neither is persuasive.

### a. Vicarious Liability under the TVPRA

RRI Defendants argue that "vicarious liability is not a viable claim under the TVPRA," because the statute "predicates liability on a defendant's personal knowledge and individual participation in a venture, which "represents a 'clear and explicit' choice to forgo common law indirect liability principles." (ECF No. 26 at 16). But although the TVPRA does not address the issue of indirect or vicarious liability, this Court is guided by "the rule of statutory construction [] that statutes are to be interpreted with reference to the common law and generally be given their common law meaning absent some indication to the contrary." *See United States v. Monasterski*, 567 F.2d 677, 682 (6th Cir. 1977) (citing *Isbrandtsen Co. v. Johnson*, 343 U.S. 779, 783 (1952); *Thomas v. United States*, 189 F.2d 494, 501 (6th Cir.), *cert. den.* 342 U.S. 850 (1951))*; see Meyer v. Holley,* 537 U.S. 280, 285–86 (2003) ("[T]he Court has assumed that, when Congress creates a tort action, it legislates against a legal background of ordinary tort-related vicarious liability rules and consequently intends its legislation to incorporate those rules.").

For this reason, federal courts adjudicating this issue routinely rely on common law to fill in the gaps. *See T.D.P.*, 725 F. Supp. 3d at 799 ("A plaintiff can also satisfy the elements of § 1595's

beneficiary theory by imputing to the defendant the acts, omissions, and state of mind of an agent of the defendant through indirect or vicarious liability." (citation and internal quotation marks omitted)); *Treminio v. Crowley Mar. Corp.*, 649 F. Supp. 3d 1223, 1232 (M.D. Fla. 2023) ("Upon review of the relevant authority, the Court declines to find that the TVPRA precludes vicarious liability."); *J.L.*, 521 F. Supp. 3d at 1064–65 ("While the TVPRA is silent on the issue of indirect liability, numerous district courts have rejected the argument that the TVPRA does not permit agency liability.").

The Sixth Circuit, to be sure, "has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA." *See T.D.P.*, 725 F. Supp. 3d at 799. Nonetheless, this Court and other district courts have applied state and federal common law of vicarious liability to assess indirect liability claims under the TVPRA. *See e.g.*, *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *A.B. v. Marriott Intern., Inc.*, 455 F. Supp. 3d 171, 194–95 (E.D. Pa. 2020) (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law); *Doe by Doe v. Piraino*, 688 F. Supp. 3d 635, 652 (M.D. Tenn. 2023) ("Federal common law agency principles apply to [TVPRA] claims."); *J.L.*, 521 F. Supp. 3d at 1064 ("Because the TVPRA is silent [on the issue of indirect liability], courts have held that the federal common law of agency should apply."); *A.B.*, 484 F. Supp. 3d at 939 ("examin[ing] vicarious liability as a question of federal common law."); *see also S.C. v. Wyndham Hotels & Resorts, Inc.*, 728 F. Supp. 3d 771, 778 (N.D. Ohio 2024) ("Courts split on whether to apply federal common law or state law. But either choice leads to the same outcome."); *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624, 649 (E.D. Mich. 2024) ("find[ing] that the analysis is largely the same under federal common law and Michigan law and, as such, will . . . apply Michigan common law")

Seeking to circumvent these well-settled principles, RRI Defendants urge this Court to adopt the position in *Doe v. Varsity Brands, LLC*, No. 1:22-CV-02139, 2023 WL 4931929 (N.D. Ohio Aug. 2, 2023), which held that 18 U.S.C. § 2255—the section of the Child Abuse Victims' Rights Act ("CAVRA") that provides a civil cause of action for certain enumerated crimes—does not provide for secondary liability. (*See* ECF No. 26 at 31 (citing *Varsity Brands*, 2023 WL 4931929, at *7-8)). But like other federal courts assessing indirect liability claims under CAVRA, this Court analyzed the statutory text and found "no reason to believe that Congress intended to prohibit plaintiffs from suing beneficiaries of and participants in the many crimes enumerated in [18 U.S.C.] § 2255." *See T.D.P.*, 725 F. Supp. 3d at 791; *see also Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1339 (S.D. Fla. 2012) (concluding that a cruise line could be held liable under 18 U.S.C. § 2255 for the sexual crimes of its employees).

Because this Court holds that the TVPRA allows for vicarious liability, RRI Defendants' motion to dismiss Plaintiff's claim on this basis must be rejected.

### b. *Principle-Agency Liability*

RRI Defendants' second argument challenges the sufficiency of Plaintiff's allegations to support an agency relationship, and it is also unavailing. As this Court has recognized, the Sixth Circuit looks to the Restatement of Agency when applying "federal common law principles of agency." *See Johansen v. HomeAdvisor, Inc.*, 218 F. Supp. 3d 577, 586 (S.D. Ohio 2016). [3] The Restatement defines agency as "the fiduciary relationship that arises when one person (a

---

[3] As this Court previously outlined, the Sixth Circuit has yet to rule on whether federal or state common law governs vicarious liability claims under the TVPRA. *See T.D.P.*, 725 F. Supp. 3d at 799. While this Court has entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, it will proceed under a federal common law analysis of the issue. *See id.* at 799–800 (explaining that "[t]his approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments").

'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006); *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 1000 (6th Cir. 2009). A principal-agent relationship is therefore "characterized by the presence of two elements": (1) "an indication by the principal that the agent will act on his behalf and subject to his control"; and (2) "a manifestation of consent by the agent so to act." *Auger v. Abb Flexible Automation, Inc.*, 34 F. App'x 160, 164 (6th Cir. 2002).

A defining element of agency "is the principal's right to control the agent's actions," particularly, "[t]he power to give interim instructions." Restatement (Third) of Agency § 1.01 cmt. f ("The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents."); *accord Johnson v. Priceline.com, Inc.*, 711 F.3d 271, 278 (2d Cir. 2013). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 756 (1998) (quoting Restatement (Second) of Agency § 219(1) (1957)).

While the mere existence of a franchise does not establish an agency relationship, the franchise model does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 623 (S.D. Ohio 2011) ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself preclude the existence of a principal-agent relationship between them." (internal quotation marks and citations omitted)); *see also* Restatement (Third) of Agency § 1.01 cmt. g ("Performing a duty created by contract may well benefit the other party but the performance is that of an agent only if the elements of agency are present."). To determine whether "a principal-agent relationship exists, courts consider the

same factors 'as in the absence of a franchisor-franchisee relationship.'" *Bricker*, 804 F. Supp. 2d at 623 (quoting *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).

Although the existence and extent of the agency relationship is a question of fact, a plaintiff must sufficiently allege that an agency relationship existed for her complaint to survive a Rule 12(b)(6) motion to dismiss. *See Brainard v. Am. Skandia Life Assur. Corp.*, 432 F.3d 655, 661 (6th Cir. 2005) ("Given that the existence of an agency relationship is a question of fact, rather than one of law, . . . the court should have denied [the defendant's] motion if any conflicting evidence of an agency relationship between plaintiffs and [the defendant] was presented."); *Foremost–McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 447 (D.C. Cir. 1990) ("It is . . . clear that the plaintiff bears the burden of asserting facts sufficient to withstand a motion to dismiss regarding the agency relationship.").

Therefore, to succeed under an agency theory, Plaintiff's allegations must establish that: (1) RRI Defendants and its franchisees (or operators of the N. High RRI) are in an agency relationship; and (2) that the N. High RRI or their staff are plausibly liable under Section 1595(a).

As to the first requirement, Plaintiff alleges sufficient facts, beyond the speculative level, to show that RRI Defendants exercised day-to-day control over the N. High RRI for purposes of an agency relationship. For example, she alleges that RRI Defendants: (1) controlled all details of the guest reservation, check-in, and payment processes through management of and control over all systems used for those processes; (2) controlled room prices, discounts, and reward programs; (3) required franchisees to use their centralized property management system; (4) collected reservation, payment, and occupancy data through a fully integrated database maintained by RRI Defendants; (5) regularly inspected RRI branded properties; and (6) dictated, supervised, and oversaw policies and protocols regarding detecting and responding to human trafficking. (*Id.* ¶¶

24

87, 100). These allegations satisfy the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate RRI Defendants' control over RRI Franchisee Defendants for purposes of an agency relationship.

Plaintiff's factual allegations likewise support the inference that Franchisee Defendants or their staff are plausibly liable under Section 1595(a) through: (1) "knowingly benefit[ting], financially or by receiving anything of value"; (2) from participating in a venture; (3) that they "should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

First, Plaintiff alleges that Franchisee Defendants rented rooms to traffickers and financially benefited from their trafficking ventures, therefore satisfying the first prong. (ECF No. 1 ¶ 93). RRI Defendants' contention that the Complaint contains "no allegations" that "any employees 'knowingly benefitted' from a trafficking venture" lacks merit. (*See* ECF No. 26 17). As explained in Section III.B.1.b.(1), *supra*, the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to satisfy the "knowing benefit" element.

Second, Plaintiff's allegations raise a plausible inference that Franchisee Defendants, along with RRI Defendants, participated in a hotel-operating commercial venture that profited from Plaintiff's sex trafficking. (ECF No. 1 ¶ 96). Finally, the Complaint plausibly alleges that Franchisee Defendants had constructive knowledge that Plaintiff was being trafficked by observing red flags consistent with sex trafficking, including Plaintiff's bruising and emotional demeanor. (*See e.g.*, *id*. ¶ 75). RRI Defendants' contention that the Complaint contains "no allegations" that the "organizations, independent of their employees, had any knowledge of Plaintiff's trafficking," (ECF No. 26 at 17), misunderstands the beneficiary theory of TVPRA civil liability. As explained in Section III.B.1.b.(3), *supra*, "actual knowledge" is not required for a plaintiff to hold defendants civilly liable as beneficiaries of her sex trafficking.

To reiterate, Plaintiff's allegations at this stage are just that: allegations. But where more than one inference may be drawn from an allegation, this Court must resolve the conflict for the plaintiff. *Mayer*, 988 F.2d at 638. Because Plaintiff's allegations, viewed most favorably to her, satisfy the three-pronged requirement of 18 U.S.C. § 1595 to hold RRI Defendants and their agents liable as beneficiaries of TVPRA violations, RRI Defendants' motion to dismiss the vicarious liability claim is denied.

RRI Defendants' motion to dismiss is therefore **GRANTED IN PART** and **DENIED IN PART**; the motion is granted with respect to Plaintiff's perpetrator liability claim and **DENIED** as to all other claims.

### IV. CONCLUSION

For the foregoing reasons, RRI Defendants' motion to transfer venue or, in the alternative, dismiss (ECF No. 26) is **GRANTED IN PART** and **DENIED IN PART**; the motion is **GRANTED** with respect to Plaintiff's perpetrator liability claim and **DENIED** as to all other claims.

    **IT IS SO ORDERED**.

**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED: March 5, 2025**